302 Ga. 200
FINAL COPY

S17A1126. CARTER v. THE STATE.

HUNSTEIN, Justice.

Appellant D'Andre Theophlouis Carter was convicted of malice murder and associated crimes in connection with the shooting death of Dequavious Reed.[1] On appeal, Carter contends that the evidence was insufficient to sustain his convictions, that the trial court erroneously admitted a portion of a recorded conversation which captured the statements of a third party who did not testify at trial, and that the trial court erroneously admitted a recording of a jailhouse telephone call made by Carter. Finding no reversible error, we affirm.

---

[1] In November 2013, a Coffee County grand jury indicted Carter and his two brothers on the charges of malice murder, felony murder predicated on burglary, felony murder predicated on armed robbery, armed robbery, and first-degree burglary. Carter was tried alone, and, following a trial conducted May 12-13, 2015, a jury returned a guilty verdict on all counts. Carter was sentenced to life imprisonment without the possibility of parole for malice murder, 20 years' imprisonment for armed robbery, and a consecutive 20-year sentence for burglary, for a total sentence of life without parole plus 40 years; the remaining counts were vacated by operation of law. Carter filed a motion for new trial on May 20, 2015, which was amended on March 14, 2016. Following a hearing, the trial court denied the amended motion on July 21, 2016; Carter subsequently filed a timely notice of appeal. This case was docketed to the April 2017 term and was thereafter submitted for decision on the briefs.

Viewing the evidence in a light most favorable to the verdicts, the evidence presented below established as follows. On July 11, 2013, Reed was discovered dead on the floor of his residence, with his pants pulled down and his shirt pulled up to his neck; he had been shot twice. Jayvias Lott, who had been arrested for armed robbery and other assorted crimes unrelated to the murder, had heard details concerning the crime and agreed to wear a secret recording device in order to obtain a statement from Carter. As agreed, Lott later recorded a conversation he had with Carter and a third party, Kavozeia Walker. In the recorded conversation, Carter recounts the events of Reed's murder, explaining that: he and his two brothers, Claron and C. J., went to Reed's residence under the pretense of purchasing drugs; after pretending to leave, the trio reversed course, and Claron shot the victim twice; Carter watched Reed die; the trio rifled through Reed's pockets, searched his residence, and stole marijuana and several hundred dollars; and, the murder weapon was thrown into a nearby pond.[2]

At trial, Lott testified regarding his conversation with Carter, and the

---

[2] This Court has already reviewed and affirmed Claron Carter's convictions and sentences. See Carter v. State, 299 Ga. 1 (785 SE2d 532) (2016).

recorded conversation was played for the jury. Finally, the State presented evidence that a firearm, later identified as the murder weapon, was discovered in a local pond.

1. The evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Carter was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Though Carter argues that there was insufficient evidence to support his burglary conviction, there was evidence before the jury that Carter and his brothers entered the house under the pretense of purchasing drugs, going so far as to pretend to leave the residence before reversing course and committing the armed robbery that ended in Reed's death; accordingly, the evidence was sufficient for the jury to conclude that Carter and his brothers entered the residence without authority and with the intent to commit a theft therein. See State v. Newton, 294 Ga. 767, 772 (755 SE2d 786) (2014).

2. Though Lott testified at trial, Walker did not, and Carter asserts that the trial court erred in admitting Walker's portion of the recorded conversation. Specifically, Carter argues that Walker's portion of the conversation was

3

irrelevant under OCGA § 24-4-402, that it was inadmissible hearsay under OCGA § 24-8-801, and that the admission of Walker's portion of the conversation violated Carter's right to confrontation. We find no error.

The recording in question reflects that Walker entered the conversation shortly after Carter and Lott began to speak, and some of the more meaningful exchanges between the three men include the following:

> WALKER: What are y'all taking about?
> CARTER: . . . Quay. Yeah.
> WALKER: What? Let me tell you about this s***. That m*****f***** there just have got everything in this b**** pockets, bro. In his pockets. They didn't even go through the house.
> CARTER: Cuz, you tripping, bro.
> . . .
> WALKER: They ain't even go through the house.
> CARTER: That's what we did. But I knew what the f*** I was doing. Because if we would have stayed a little bit longer, we would have got caught.
> WALKER: True. True. True.
> . . .
> LOTT: What y'all got?
> CARTER: S***. I got money and dope.
> LOTT: How much money?
> WALKER: Two hundred.
> CARTER: H*** no. You a d*** liar. I got that by myself. Me and Claron had three hundred, and C. J. had about two hundred.
> . . .
> WALKER: I seen them. I was sitting on the porch. I seen Dre coming up the road. He done whipped that bit behind Tip's house. I say, "oh, they done did it" — Claron say, "I shot his a**."

4

I said "b**** stop b*lls****ing." That bit got blood all on him, I said, man that n***** was tripping, cuz.

CARTER: I didn't see it. I didn't even know.

LOTT: What did you do, hold him or something?

CARTER: No, I went in his pockets. I was the one who went in his pockets.

LOTT: When he was alive?

WALKER: When he was dying. Because he was . . .

CARTER: No. I watched it.

WALKER: C. J. said he was dead before he hit the floor.

CARTER: No, man, C. J. wasn't even in the f***ing house.

. . .

LOTT: Oh man. Come on. What I'm saying when he was trying to buck, what the h***, y'all — cuz panic or something?

CARTER: No, bro. I told lil bro.

WALKER: It was planned.

CARTER: Hunh?

WALKER: It was planned.

CARTER: It was planned.

The recording and transcript were admitted over counsel's objection, and the jury was instructed that they were not to consider Walker's statements as evidence of Carter's guilt. We now review the trial court's ruling on the admissibility of this evidence for abuse of discretion. See Adkins v. State, 301 Ga. 153 (2) (800 SE2d 341) (2017).

(a) Relevancy and Its Limits

"All relevant evidence [is] admissible." OCGA § 24-4-402. Under OCGA § 24-4-401, "relevant evidence" is defined as "evidence having any

5

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We have recognized before that the relevance standard in the new Evidence Code is a "liberal one." See State v. Jones, 297 Ga. 156, n. 2 (773 SE2d 170) (2015).

Without citation to anything more than the relevancy statutes, Carter argues that the State has failed to demonstrate that Walker's portion of the recorded conversation was relevant. At most, Carter suggests that, because the jury was instructed to "ignore" Walker's portion of the conversation, his statements were necessarily irrelevant; however, this argument is both premised on an incorrect assessment of the trial court's instruction and illogical. Though the trial court instructed the jury not to consider Walker's portion of the conversation "as evidence of guilt of the accused" or "for the truth of the matter asserted," the jury was not instructed to ignore Walker's statements. Likewise, simply because the jury was instructed not to consider the substance of Walker's statements it does not follow that his portion was irrelevant; Walker's comments were necessary to provide context and clarity to Carter's responses, and the conversation as a whole was very relevant to the primary issue before the jury,

namely Carter's guilt.

Nevertheless, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. As we have noted before, the primary purpose behind Rule 403 is to "exclud(e) matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) Hood v. State, 299 Ga. 95, 103 (786 SE2d 648) (2016). Rule 403 is an extraordinary remedy which the courts should invoke "sparingly, and the balance . . . should be struck in favor of admissibility." (Citations and punctuation omitted.) United States v. Dodds, 347 F3d 893, 897 (11th Cir. 2003).

Carter asserts, without exposition, that Walker's statements in the recorded conversation "were unfairly prejudicial, confusing and misleading." However, "[s]imply because the evidence is damaging or prejudicial to a defendant's case does not mean . . . that the evidence should be excluded." United States v. Terzado-Madruga, 897 F2d 1099, 1119 (11th Cir. 1990). Under Rule 403, the extraordinary remedy of exclusion requires that the danger

of unfair prejudice, confusion, or misleading the jury *substantially outweigh* the probative nature of the evidence. Walker's portion of the conversation, however, is not of such scant evidentiary value that it would be so outweighed, and it certainly was not introduced solely for its unfair prejudicial impact. Accordingly, the trial court acted within its discretion to conclude that Walker's portion of the recorded conversation was relevant.

(b) Hearsay and Confrontation Clause

Carter also argues, again citing to little meaningful authority, that Walker's portion of the conversation was inadmissible hearsay and that the admission of Walker's portion of the conversation ran afoul of the Confrontation Clause. We disagree.

"'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c). Thus, an out-of-court statement is *not* hearsay if it is offered for some purpose other than to prove the truth of the matter asserted. United States v. Parry, 649 F2d 292, 295 (5th Cir. 1981). Here, Walker's portion of the conversation was *not* offered to prove the truth of the matter asserted. Instead, the State adduced Walker's statements to provide the

jury with a complete, coherent conversation and to give context to Carter's inculpatory statements; the import of Walker's portion of the conversation is not derived from its substance or accuracy but, instead, from Carter's responses thereto.[3] Accordingly, the trial court correctly ruled that Walker's portion of the conversation did not amount to hearsay. See United States v. Price, 792 F2d 994, 997 (11th Cir. 1986) ("The single purpose for admitting the [informant's] statements was to make understandable to the jury the statements made by [defendant] himself. The statements are not hearsay, as they were not offered for the truth of the matter asserted."); United States v. Williams, 604 F2d 1102, 1118 (8th Cir. 1979) ("[T]he tape-recorded conversation was not hearsay because it was admitted to provide a context for [the defendant's] end of the conversation, not as proof of the matters asserted therein by [the non-testifying party]."); Jones v. State, 339 Ga. App. 95 (2) (791 SE2d 625) (2016) (informant's portion of recording not hearsay when offered to provide context

---

[3] We note that Walker's statement indicating that Claron had admitted to shooting Reed was a fact independently established at trial and emphasized by the defendant.

9

to defendant's portion of conversation).[4]  Further, the trial court's instruction concerning Walker's portion of the conversation was sound, and we presume that the jury followed it.  Francis v. Franklin, 471 U. S. 307, 324 n. 9 (105 SCt 1965, 85 LE2d 344) (1985) (a crucial assumption of our constitutional system is that jurors follow the trial court's instructions).

Finally, with respect to Carter's confrontation clause argument, even if we were to assume that Walker's recorded statements are testimonial, an assumption that is highly questionable, see, e.g., Davis v. Washington, 547 U. S. 813, 825 (126 SCt 2266, 165 LE2d 224) (2006) (remarking that statements made unwittingly to government informant are non-testimonial), there is no confrontation clause violation where, like here, the out-of-court statements are used for "purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U. S. 36, 59, n. 9  (124 SCt 1354, 158 LE2d 177) (2004).  See also United States v. Jiminez, 564 F3d 1280 (III) (11th Cir. 2009). Accordingly, this argument is without merit.

---

[4] See also United States v. Taylor, 688 Fed. Appx. 638 (11th Cir. 2017); United States v. Macari, 453 F3d 926 (7th Cir. 2006); Lee v. McCaughtry, 892 F2d 1318, 1324, n. 10 (7th Cir. 1990) (collecting cases).

3. During trial, the trial court also admitted a 45-second recorded telephone call that was initiated by Carter while he was in pretrial detention; the recorded telephone call captured Carter's voice and laughter, and it was admitted under the business-record exception to the hearsay rule through the testimony of Lt. Walter James, an assistant jail commander. On appeal, Carter argues, inter alia, that the recording was inadmissible hearsay that does not fall within the business-record exception, that Lt. James' testimony concerning Carter's calling card was inadmissible, and that the State failed to authenticate the recorded call under OCGA §§ 24-9-901 and 24-9-923. There is no reversible error.

Carter first argues that the telephone recording is inadmissible hearsay and that it does not fall within the business-record exception to the hearsay rule. See OCGA § 24-8-803 (6). As Carter himself acknowledges on appeal, however, the recording was admitted "to allow the jury to compare the laughter and voice on the telephone recording with the Lott recording," and, thus, it was not offered *to prove the truth of the matter asserted.* Accordingly, the recorded telephone conversation is not hearsay, see, e.g., OCGA § 24-8-801 (c), and, as such, it is immaterial whether the conversation falls within the business-record exception.

11

Consequently, Carter's argument that the recording was inadmissible hearsay is without merit.[5]

Carter's remaining arguments — that Lt. James' testimony concerning the calling card was inadmissible and that the State failed to authenticate the recorded telephone call under OCGA §§ 24-9-901 and 24-9-923 — are being asserted for the first time on appeal, and, thus, are not preserved for appellate review.[6] Accordingly, we review these claims for plain error. See OCGA § 24-1-103 (d); Gates v. State, 298 Ga. 324 (3) (781 SE2d 772) (2016).

In State v. Kelly, 290 Ga. 29 (718 SE2d 232) (2011), this Court adopted

---

[5] Our conclusion that the recorded telephone conversation was not hearsay renders moot Carter's argument that the State failed to "lay a proper foundation" to show that the recording was a business record under OCGA § 24-8-803 (6).

[6] While trial counsel argued below both that Lt. James was not the custodian of the phone records and that the recorded telephone conversation was inadmissible, trial counsel made no argument with respect to Lt. James testifying concerning the calling card numbers. Likewise, counsel never argued that the State failed to authenticate the recorded telephone conversations pursuant to OCGA §§ 24-9-901 and 24-9-923. Though counsel twice stated that he did not "think the State [could] lay a proper foundation," the lack of specificity in that argument generally fails to preserve the argument for review, see Tolver v. State, 269 Ga. 530 (2) (500 SE2d 563) (1998), and the "foundational requirements" that counsel appears to reference, which once controlled the admission of this type of recording, are no longer applicable now that Georgia's new Evidence Code is in effect. See Jones v. State, 299 Ga. 40, 44 (785 SE2d 886) (2016). Thus, Carter's failure to raise these specific objections below failed to preserve these arguments for appeal. See Sanchez v. State, 285 Ga. 749 (3) (684 SE2d 251) (2009).

12

the federal plain error standard as set out in Puckett v. United States, 556 U. S.

129 (II) (a) (129 SCt 1423, 173 LE2d 266) (2009), which involves the following

four prongs:

> First, there must be an error or defect — some sort of "[d]eviation from a legal rule" — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the [trial] court proceedings." Fourth and finally, if the above three prongs are satisfied, the [appellate court] has the *discretion* to remedy the error — discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

(Citations omitted; emphasis in original.) Kelly, 290 Ga. at 33. "Reversal is

authorized only if all four prongs are satisfied — a 'difficult' standard indeed."

(Citation omitted.) Carruth v. State, 290 Ga. 342, 348 (6) (721 SE2d 80) (2012).

Even if we were to presume that Carter satisfied the first and second

prongs of the Kelly test, there is no plain error here because he has failed to

meet his burden under the third prong. It is undisputed that the brief recording

includes nothing more than a portion of a random conversation which was

adduced by the State to allow the jury to compare the voice and laugh on the

13

telephone call with the voice and laugh in the recorded conversation with Lott; nothing on the recording directly inculpated Carter, and trial counsel acknowledged below that there was nothing objectionable concerning the content of the recording.  Further, the recorded telephone conversation was not the only evidence connecting Carter with the recorded conversation with Lott.  The jury heard testimony that the robbery-turned-murder was committed by Carter and his brothers; the speaker in the recorded conversation with Lott makes numerous references to his brothers, calling them by name.  Though the recorded telephone conversation helped the State connect Carter with the recorded conversation with Lott, a review of the record as a whole indicates that any error here did not affect the outcome of the proceedings.  Kelly, supra.

Judgment affirmed.  All the Justices concur.

Decided October 2, 2017.

Murder. Coffee Superior Court. Before Judge Brooks.

John C. Culp, for appellant.

George E. Barnhill, District Attorney, Ian L. Sansot, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.