306 Ga. 44
FINAL COPY

S19A0177.  WALKER v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Harvey Walker was found guilty of murder and related crimes in connection with the shooting and stabbing death of his ex-girlfriend, Kateria Benton.[1] On appeal, Walker contends, among other things, that the evidence was insufficient to support the verdict and that the trial court erred by

---

[1] On October 7, 2015, Walker was indicted by a Clayton County grand jury for malice murder, felony murder (predicated on aggravated assault), five counts of aggravated assault, possession of a knife during the commission of a felony, and possession of a firearm during the commission of a felony. Following an April 2016 jury trial, Walker was found guilty on all counts and sentenced to serve life without parole for malice murder and twenty years consecutive for one of the aggravated assault counts. The trial court also sentenced Walker to five consecutive years each for the possession of a knife count and for the possession of a firearm count. The trial court merged the remaining aggravated assault counts into the malice murder count for sentencing purposes, and the felony murder count was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). On May 2, 2016, Walker filed a motion for new trial, which he amended with new counsel on May 4, 2017. The trial court denied Walker's motion on July 23, 2018. Walker filed a timely notice of appeal on August 21, 2018, and his appeal was docketed to this Court for the term beginning in December 2018 and submitted for a decision on the briefs.

allowing improper testimony and evidence of prior bad acts to be admitted at trial. For the reasons set forth below, we affirm.

1. In the light most favorable to the verdict, the evidence presented at trial revealed that, around December 2014, Walker and Benton broke up over allegations of Walker cheating. However, in January 2015, Benton invited Walker to move into her apartment and stay in a separate bedroom. At that time, Benton lived with her niece, Shanise McGill. Around early March 2015, McGill overheard Benton and Walker arguing over Benton's password-protected cellular telephone.

On Friday, March 27, 2015, Benton told her neighbor, Blanche Holloway, that Walker was jealous and "too controlling," so she had told him to move out. Sometime that night, Walker attacked Benton in her master bedroom with a blunt object, leaving a pool of blood in the corner of the bedroom. Walker then fired a shot from a handgun that went into the bedroom ceiling. When Benton tried to escape to the kitchen, Walker fired a second shot, but this shot missed Benton. Walker fired a third time, and this time hit Benton in her back.

When Benton fell to the kitchen floor, she was still alive, and Walker stabbed her repeatedly until she died. After stabbing Benton to death, Walker destroyed her phone, covered her with a sheet, and attempted to clean himself up in the bathroom. He then shot himself in the hand and cut his own wrist. The blood pattern on the floor of Benton's bedroom was consistent with someone standing over her and hitting her repeatedly with an object or a fist. A spent shell casing was found on Benton's bed, and there was a bullet hole in the ceiling consistent with a gun being pointed upward. In addition, blood marks on the walls of the kitchen, the dishwasher, and the stove were consistent with those left by someone struggling or attempting to escape. Lastly, DNA from an ammunition box found in the home matched Walker's, and Benton's blood was found on the magazine of the firearm.

On the morning after the murder, Walker called a friend and told her, "I might be going to jail," before calling 911. Around 7:30 a.m., emergency personnel responded to Walker's 911 call summoning them to Benton's apartment, where they found Benton

dead, lying on her back in a pool of blood and partially covered with a sheet. When police arrived, Walker came out of the front door with his arms raised. Walker said to the responding officer, "I f**ked up, I f**ked up, I stabbed her" and "[s]he's in the kitchen." The officer observed two bloody knives on the floor, a handgun on the dining room table, and a spent shell casing under the table. Walker had a gunshot wound on his left hand and a deep laceration to his left wrist.

On the way to the hospital, Walker told a paramedic that he and Benton had gotten into an altercation where she shot him, and he then had to wrestle a butcher knife out of her hand. Walker testified at trial that he stabbed Benton "a couple" of times in self-defense. However, a medical examiner confirmed that Benton suffered one gunshot wound to her back right shoulder and a total of 27 sharp-force injuries, which included both stab wounds and incised wounds. In all, Benton suffered six stab wounds to her torso, one stab wound and nine incised wounds to her extremities, and three stab wounds and eight incised wounds to her head. One of the

stab wounds to Benton's torso, which fractured her rib and hit an artery near her heart, killed her. The medical examiner also explained that many of Benton's wounds were consistent with defensive injuries suffered by someone trying to ward off an attack.[2]

The evidence presented at trial was sufficient to enable a rational trier of fact to reject Walker's claim that he had been acting in self-defense at the time that he shot and stabbed Benton and find him guilty beyond a reasonable doubt of malice murder and the other crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also, e.g., *Roper v. State*, 281 Ga. 878 (1) (644 SE2d 120) (2007) (witness credibility is for the jury to decide, as is the question of justification; therefore, the jury is free to reject claim that defendant acted in self-defense).

---

[2] Evidence was also introduced, as discussed further in Division 3, showing that Walker was previously married to Bessie Wilson, who described Walker as often "very jealous" and someone who frequently accused her of cheating. On September 26, 2007, Wilson told Walker that she wanted a divorce. Later that night, Wilson woke up to Walker holding a hammer and saying, "someone's going to die tonight." Walker then hit Wilson on her head and legs with the hammer, dragged her to the kitchen, said, "I can't do this," and left. Wilson saw an assortment of knives, including a butcher knife, set out on the kitchen counter.

2. Walker contends that the trial court erred by excluding his sister Helen Walker's potential testimony in which she would have stated that Walker told her after the shooting that "[Benton] tried to kill me." However, pretermitting the question of whether the trial court erred in excluding this testimony, any error was rendered harmless.[3] To begin with, the testimony was somewhat cumulative of Walker's own testimony in which he claimed that he acted in self-defense and his statement to the paramedic and the responding officer in which he claimed that Benton had shot him and that he had to wrestle a knife out of her hand. See *Nix v. State*, 280 Ga. 141 (5) (625 SE2d 746) (2006) (the trial court's error, if any, in excluding

---

[3] We note that, while the trial court excluded the testimony categorically as "self-serving," the "blanket policy against 'self-serving' statements" might not have survived the passage of Georgia's new Evidence Code. See *State v. Hodges*, 291 Ga. 413, 422 n.6 (728 SE2d 582) (2012) (Nahmias, J., concurring). See also Jack Goger, Daniel's Georgia Handbook on Criminal Evidence § 8:1 (2011 ed.) (noting that the State Bar's comment on OCGA § 24-8-801 (c) states, "[t]he proposed new rules would not retain the self-serving statement rule. If a hearsay statement of a party is admissible under a hearsay exception, the fact that it is self-serving should go to weight, not admissibility."). However, we need not address the continued viability of the self-serving statement rule or whether Helen's statements would fall under an exception to the rule against hearsay, as the exclusion of Helen's testimony resulted in no harm to Walker.

hearsay testimony of defendant's mother, was harmless where the excluded testimony was largely cumulative of other evidence introduced at trial). Moreover, the evidence of Walker's guilt was overwhelming, including (1) evidence showing that Walker shot Benton in the back while she was trying to get away from him, which directly undermined his claim of self-defense; and (2) Walker's own admission to police that he had "f\*\*ked up" and stabbed Benton, where the evidence showed that Benton was stabbed or cut nearly 30 times. The overwhelming evidence showed that Walker shot Benton when she could no longer have been a threat to him and that he continued to brutally stab her to death after she had fallen as a result of being shot, not that he acted in self-defense.[4]

3. Walker argues that the trial court erred in admitting evidence of the 2007 domestic violence incident with his ex-wife,

---

[4] Walker argues, outside of a formal enumeration of error, that his trial counsel was ineffective for not recalling Helen to testify once Walker himself had testified. However, because Walker did not raise or argue this specific ground of ineffective assistance of counsel prior to this appeal, it cannot be reviewed here. See *Rickman v. State*, 304 Ga. 61 (3) (816 SE2d 4) (2018); *Wilson v. State*, 277 Ga. 195, 200 (2) (586 SE2d 669) (2003).

Wilson. Pretermitting whether it was error for the trial court to admit this evidence at trial, the error does not require the reversal of his conviction. *Kirby v. State*, 304 Ga. 472, 487 (4) (c) (819 SE2d 468) (2018) (finding that although the trial court erred in admitting evidence of the defendant's prior aggravated assault and armed robbery, the error was harmless in light of the other compelling evidence against the defendant).

Here, the State filed a notice of its intent to introduce evidence of Walker's prior aggravated assault of his ex-wife pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"). Rule 404 (b) provides, in pertinent part:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

The trial court granted the State's request on the ground that the evidence was relevant to the issue of Walker's intent to commit the crimes that he had been accused of perpetrating, and specifically

instructed the jury with regard to its consideration of the evidence that,

> [i]n order to prove its case the State must show intent. To do so the State will offer evidence of another crime allegedly committed by the accused. You are permitted to consider that evidence only insofar as it may relate to that issue and not for any other purpose. You may not infer from the evidence that the defendant is of a character that would commit such crimes. The evidence may be considered only to the extent that it may show the issue that the State is required to prove in the crimes charged in the case now on trial. Such evidence, if any, may not be considered by you for any other purpose.

Any error in the admission of the prior acts evidence was rendered harmless in light of the overwhelming evidence of Walker's guilt. See *Parks v. State*, 300 Ga. 303, 308 (2) (794 SE2d 623) (2016) (citing *United States v. Hosford*, 782 F2d 936, 939 (11th Cir. 1986) (where evidence of guilt is "overwhelming," erroneous admission of Rule 404 (b) evidence is harmless)). Walker not only admitted to having "f**ked up" by stabbing Benton, he also called a friend the morning after the murder and indicated that he knew that he "might be going to jail" for what he did. Furthermore, "in stark contrast to [the defendant's] testimony that his intent was merely to prevent

the victim from harming him," the evidence showed that Walker shot Benton in the back while she was trying to get away from him and that some of the 27 sharp-force injury wounds that she suffered occurred after she had already fallen from the gunshot wound. See *Lamb v. Jernigan*, 683 F2d 1332, 1342 (3) (11th Cir. 1982). Accordingly, the overwhelming evidence against Walker, completely independent of the evidence offered by Wilson, pointed directly to an intentional and malicious killing committed by him in this case rather than one that was committed in self-defense. See *Parks*, 300 Ga. at 308 (2).

4. Lastly, Walker contends that the trial court erred in denying his request for a mistrial after the court erroneously admitted into evidence, as a prior "conviction," his first-offender guilty plea relating to the 2007 domestic violence incident with Wilson. See *Davis v. State*, 269 Ga. 276, 277 (496 SE2d 699) (1998) ("A first offender's guilty plea does not constitute a 'conviction' as that term is defined in the Criminal Code of Georgia."). We disagree.

Even though the trial court denied defense counsel's request

for a mistrial, it agreed with defense counsel that it had erroneously admitted the evidence of the first-offender guilty plea. To cure the error, the trial court instructed the jury that, "after further consideration this court agrees with the defendant's counsel that [the guilty plea] should not have been admitted[;] therefore you may not consider that exhibit in any way when you deliberate this case as it will be removed from your consideration." This Court has found that the trial court can negate the potentially harmful effect of improperly introduced evidence by prompt curative instructions rather than by granting a mistrial. *Rucker v. State*, 293 Ga. 116, 121 (2) (744 SE2d 36) (2013) (finding no abuse of discretion in the trial court's denial of defendant's motion for mistrial because the court's curative instructions were sufficient to correct any error in the introduction of evidence relating to the defendant's alleged propensity for violence). Indeed, "[t]he decision to grant a mistrial is within the discretion of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." (Citation omitted.) *Jackson*

*v. State*, 292 Ga. 685, 689 (4) (740 SE2d 609) (2013). Here, the trial court gave an appropriate curative instruction and even polled the jury to make sure that all of the jurors understood the instruction. And, we "ordinarily presume that a jury follows [curative] instructions." *Coleman v. State*, 301 Ga. 720, 722 (3) (804 SE2d 24) (2017). We find no abuse of discretion in the trial court's decision to deny the motion for a mistrial, as the curative instruction was sufficient to correct any error and to preserve Walker's right to a fair trial. *Jackson*, 292 Ga. at 689 (4).

Judgment affirmed. All the Justices concur.

Decided June 3, 2019.

Murder. Clayton Superior Court. Before Judge Mack.

Stanley W. Schoolcraft III, for appellant.

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Christopher D. Sperry, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.