310 Ga. 443
FINAL COPY

S20A1218. MORRIS v. THE STATE.

MELTON, Chief Justice.

Following an August 6-10, 2018 jury trial, Tommy Lee Morris
was convicted of felony murder and possession of a firearm by a
convicted felon in connection with the shooting death of Tony
Foster.[1] On appeal, Morris contends only that the evidence

[1] On May 23, 2017, Morris was indicted by a Clarke County grand jury
for malice murder (Count 1), felony murder predicated on aggravated assault
(Count 2), felony murder predicated on possession of a firearm by a convicted
felon (Count 3), aggravated assault with a deadly weapon (Count 4), two counts
of unlawful possession of a firearm by a convicted felon under OCGA § 16-11-
133 (prior felony convictions involving certain specified crimes, including
crimes involving the use of a firearm) (Counts 5 and 6), possession of a firearm
during the commission of a crime (Count 7), and two counts of possession of a
firearm by a convicted felon in violation of OCGA § 16-11-131 (possession of a
firearm by convicted felons and first offender probationers where prior felony
conviction does not have to involve use of a firearm) (Counts 8 and 9). At his
August 2018 jury trial, Morris was acquitted of malice murder, but was found
guilty on the remaining counts. He was sentenced to life for felony murder
predicated on aggravated assault (Count 2) and fifteen years consecutive for
unlawful possession of a firearm after having previously been convicted of an
aggravated assault involving the use of a firearm (Count 5). The remaining
counts were vacated or merged for sentencing purposes. After Morris's trial
counsel withdrew from the case, Morris filed a pro se motion for new trial on
September 4, 2018, which he amended with new counsel on June 28, 2019.
Following a November 11, 2019 hearing, the motion was denied on March 5,
2020. Morris filed a timely notice of appeal on March 30, 2020, and his appeal

presented at trial was insufficient to support his convictions.[2] We affirm.

When evaluating the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). On appeal, "this Court does not re-weigh the evidence or resolve conflicts in testimony, but instead defers to the jury's assessment of the weight and credibility of the evidence." (Citation omitted.) *Curinton v. State*, 283 Ga. 226, 228 (657 SE2d 824) (2008).

---

was docketed to the August 2020 term of this Court and submitted for a decision on the briefs.

[2] Because Morris was convicted only on Counts 2 and 5 of the indictment, his arguments relating to the sufficiency of the evidence to support guilty verdicts on the counts that were vacated or merged with Counts 2 and 5 are moot and will not be addressed. See *Anderson v. State*, 299 Ga. 193, 196 (1) n.4 (787 SE2d 202) (2016) (a defendant is not "convicted" on counts that are vacated or that merge with other offenses for sentencing purposes, and challenges to the sufficiency of evidence to support those non-existent convictions are moot). See also OCGA § 16-1-3 (4) ("'Conviction' includes a final judgment of conviction entered upon a verdict or finding of guilty of a crime upon a plea of guilty.").

Viewed in the light most favorable to the verdict, the evidence presented at trial reveals that, on March 5, 2017, Foster went with Morris's estranged wife, Vernita, to a club called the Blue Moon. Morris, a convicted felon,[3] was already at the Blue Moon when Vernita and Foster arrived, and his car was in the parking lot. Vernita was romantically involved with Foster, and Morris and Foster had argued a number of times in the past about Foster's relationship with Vernita.

---

[3] The State used Morris's March 1993 plea to an aggravated assault charge involving the use of a firearm to prove his convicted felon status for purposes of Count 5 of the indictment. Morris contends that, because he pled nolo contendere to the 1993 charge and was sentenced to five years of probation as a first offender, the State did not prove that he had been "convicted" of that 1993 offense. See OCGA §§ 17-7-95 (c) ("Except as otherwise provided by law, a plea of nolo contendere shall not be used against the defendant in any other court or proceedings as an admission of guilt or otherwise or for any purpose[.]"); 16-1-3 (4). However, Morris does not dispute that the State also showed that on September 7, 1993, the trial court revoked Morris's first offender probationer status after he violated the terms of his probation, adjudicated him guilty of the felony aggravated assault, and resentenced him. This made Morris a convicted felon. See, e.g., *Roland v. Meadows*, 273 Ga. 857, 858 (1) (548 SE2d 289) (2001) ("When a first offender probationer violates the terms of his probation and the trial court enters an adjudication of guilt, the court may impose any sentence permitted by law for the offense the probationer has been found guilty of committing."); *Daniels v. State*, 271 Ga. 167 (517 SE2d 66) (1999) (defendant was a "convicted felon" after trial court revoked defendant's first offender status and adjudicated him guilty of felony armed robbery based on defendant's violation of terms of his first offender probation). Morris's argument to the contrary is without merit.

Morris approached Foster and Vernita inside the Blue Moon, put his arm around Vernita, and thanked her for what she had done to support their children. Foster and Morris did not speak to each other at that time, but Morris told Vernita that he was going to go outside to take off his jacket. Vernita told Foster not to go, because she feared that Morris would "shoot the place up." Nevertheless, Foster exited the club, followed by Vernita and Morris. Once outside, Foster told a friend who was also at the club that he was going to "straighten this [out with Morris]" because Foster "felt disrespected." Morris then said to Foster, "Hold up, wait right there; I got something for your a**," as he went to his car to retrieve an SAR-1 rifle. After retrieving the rifle from his car, Morris said to the unarmed Foster, "Who you think you f**king with?" and opened fire on him at close range in front of several witnesses. Foster fell to the ground, and seemed "lifeless" after the first shot, but Morris continued shooting Foster while he was lying face down. In the end, Morris shot Foster at least 19 times, killing him, with four shots being delivered to the back of his head after he had fallen to the

ground and several others being delivered to his back while he remained on the ground. At trial, Morris admitted shooting Foster but claimed that he had done so in self-defense.

The evidence presented was more than sufficient for a rational jury to reject Morris's theory of self-defense and find him guilty beyond a reasonable doubt of the crimes for which he was convicted. See, e.g., *Walker v. State*, 306 Ga. 44 (2) (829 SE2d 121) (2019) (Overwhelming evidence authorized the jury to reject self-defense theory and find the defendant guilty of murder where the defendant shot the victim in the back while she was trying to get away from him and the defendant "continued to brutally stab her to death after she had fallen as a result of being shot.").

*Judgment affirmed. All the Justices concur, except Warren, J., not participating.*

Decided November 16, 2020.

Murder. Clarke Superior Court. Before Judge Porter, Senior Judge.

*John W. Donnelly*, for appellant.

*Brian V. Patterson, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.