310 Ga. 608
FINAL COPY

S20A1533. LYNN v. THE STATE.

PETERSON, Justice.

James Morris Lynn, Jr., appeals his conviction for malice murder and aggravated assault in connection with the beating death of his wife, Tonya Lynn.[1] Lynn argues that we should vacate the trial

---

[1] The crimes occurred sometime between July 26 and July 27, 2011. In October 2011, a Barrow County grand jury indicted Lynn for malice murder, felony murder predicated on aggravated assault, and aggravated assault. Lynn was convicted of malice murder following a jury trial in June 2012, but we reversed his conviction based on the erroneous exclusion of evidence. See *Lynn v. State*, 296 Ga. 109 (765 SE2d 322) (2014). Lynn was retried from August 26 to September 3, 2015, and the jury found him guilty on all counts. The trial court sentenced Lynn to life in prison without the possibility of parole for malice murder and to a 20-year concurrent term for aggravated assault; the felony murder count was vacated by operation of law. Lynn timely filed a skeletal motion for new trial, which the trial court denied on November 2, 2016. Substitute appellate counsel filed a motion for out-of-time appeal in March 2019, alleging that Lynn's prior attorney failed to file a notice of appeal due to an oversight. The trial court granted the motion for out-of-time appeal, and Lynn filed an amended motion for new trial, raising claims that trial counsel was ineffective. See *Maxwell v. State*, 262 Ga. 541, 542-543 (3) (422 SE2d 543) (1992) (permitting a defendant to file a second motion for new trial following the grant of an out-of-time appeal, and giving the trial court the discretion to refuse to reopen issues decided in the first motion for new trial). On May 1, 2020, the trial court denied Lynn's amended motion for new trial following a hearing. Lynn timely filed a notice of appeal. His case was docketed to this Court's August 2020 term and submitted for a decision on the briefs.

court's order denying his motion for new trial for lack of adequate findings and remand for more detailed findings. He also argues that the trial court erred in denying his motion for a mistrial, he received ineffective assistance of trial counsel, and the combined errors cumulatively prejudiced him. But the trial court was not required to make detailed findings in denying Lynn's motion for new trial. The trial court did not err in denying Lynn's motion for a mistrial because the alleged basis for a mistrial posed little prejudice to Lynn and the court gave a sufficient curative instruction. Lynn's ineffective assistance claims fail because he has not established that trial counsel performed deficiently in any respect. And his cumulative error argument fails because there are no errors to cumulate. We vacate Lynn's sentence for aggravated assault because this count should have merged with the malice murder conviction, but we affirm the murder conviction.

The evidence at trial showed the following.[2] After Tonya went

---

[2] Because we consider the cumulative prejudice of alleged trial counsel deficiencies, we present the evidence as jurors reasonably would have viewed it, rather than in the light most favorable to the jury's verdict.

missing, police interviewed Lynn multiple times, and he eventually admitted killing Tonya by hitting her in the head with a baseball bat. He led police to a well where he had dumped her body. An autopsy showed that Tonya died from blunt force trauma to the head.

The State presented evidence showing that the couple had a rocky relationship. Lynn and Tonya, who had four children together, separated and both filed for a divorce in early 2011. During their separation, Lynn and Tonya each started dating other people. Tonya began a relationship with David Bulloch, while Lynn began a relationship with Jennifer Butler. Lynn told Tonya's aunt that he was not going to share custody of his children with anyone.

The couple moved back in together in May 2011, but their troubles continued. On May 13, 2011, Tonya was in her bedroom watching a movie with one of her daughters and her niece. Tonya's niece testified that when Lynn arrived home from work, he began an argument with Tonya about whether she was texting someone. Lynn yelled at Tonya and flipped over the mattress Tonya was

3

sitting on, causing her to fall to the floor and injure her knee.

Tonya became increasingly scared of Lynn, telling people he had said he would kill her before he let her go. One of Tonya's cousins explained that Tonya did not immediately leave Lynn because Tonya was concerned about supporting herself and her children on her salary, and Lynn controlled access to their bank accounts. Tonya began taking steps to save money in order to leave Lynn permanently.

Meanwhile, Lynn continued to communicate with Butler, stating that he did not want to be a part-time dad and frequently expressing his frustration with the pending divorce and fear that Tonya would leave with their children. On June 30, Lynn wrote an e-mail to Butler, saying, "I have high hopes my problem will soon be gone for good. I have to be patient and bide my time wisely and always have a good alibi[.]" In subsequent e-mails, Lynn expressed his anger about the possibility of Tonya leaving with the children and said that she "doesn't deserve to even be living" and that he thought he would be happy if she were "gone for good."

On July 24, Tonya talked to Bulloch and told him that Lynn threw her into a doorframe and that, as a result, she planned to leave Lynn and take the children with her. The next day, Lynn called Tonya's cousin, Julie Royster Hollifield, saying that Tonya wanted to leave him and asking Hollifield to convince Tonya to stay with him. Hollifield and Tonya talked on July 26, and Tonya said she had "decided for sure she was leaving" and had packed her belongings.

The following day, July 27 Tonya failed to show up to work at 6:30 a.m. as scheduled. When Tonya was still absent at 7:30 a.m., her supervisor, Stacey Morris, began making phone calls in an attempt to locate Tonya. Tonya's co-workers called law enforcement, and officers began searching for her. Tonya's family members told officers that Lynn claimed both that Tonya probably died due to a heart condition and that one of Tonya's cousins probably killed her. Officers asked to interview Lynn and requested that he bring in his cell phone because it might contain data that could help them in their investigation. Lynn brought his cell phone, but it had been

5

"completely wiped" of all data.

Tonya's SUV was found in a library parking lot on July 27, but there were no signs of Tonya. Surveillance video from the library showed that the vehicle was left there around 1:38 a.m. on July 27, and that the male subject driving the SUV got into a truck that was later determined to be owned by Butler. Police interviewed Butler, who testified at trial that she went to the library to pick up Lynn after he called her. After Butler's interview, the police arrested Lynn on obstruction charges because he had lied about not knowing how Tonya's vehicle came to be left at the library. During an interview conducted after his arrest, Lynn admitted killing Tonya with a baseball bat and told police where they could find her body.

Lynn testified in his defense at trial, claiming that he killed Tonya in the heat of passion and in self-defense. His story was as follows. Lynn and Tonya separated in early 2011 because she was having an affair with Bulloch, he believed she continued the affair after he and Tonya reconciled, and he and Tonya argued repeatedly about his suspicions. On July 26, 2011, he confronted Tonya with

information that confirmed his suspicions about her continuing an affair and told her that he was going to contact his divorce attorney. Tonya became extremely upset and taunted Lynn, saying that, because he could not satisfy her sexually, she was having sex with multiple men. Tonya retrieved a baseball bat and took a swing at him while he was in the bathroom. Lynn caught the bat with his hands, snatched it away, and immediately swung back at her, hitting her twice. Lynn left the room, returned after a few minutes, and noticed that Tonya was not breathing and did not have a pulse. Lynn then wiped up the blood on the floor, rolled Tonya up in a blanket, slid her down the stairs, put her in the back of his vehicle, and drove around town for a while before returning home to clean the house and the bathroom. Several hours later, Lynn got ready for work and, on his way there, he decided to dump Tonya's body.

1. Lynn does not challenge the sufficiency of the evidence to support his convictions, but we have independently reviewed the evidence presented at trial and conclude that the evidence was legally sufficient to authorize a rational trier of fact to find beyond a

7

reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); see also *Shaw v. State*, 292 Ga. 871, 872 (1) (742 SE2d 707) (2013) ("[I]ssues of witness credibility and justification are for the jury to decide, and the jury is free to reject a defendant's claim that he acted in self-defense." (citation and punctuation omitted)).[3]

Lynn also does not challenge his sentence on appeal, but we do recognize a merger error in his sentence. See *Dixon v. State*, 302 Ga. 691, 696-697 (4) (808 SE2d 696) (2017) ("We have the discretion to correct merger errors sua sponte . . . because a merger error results in an illegal and void judgment of conviction and sentence." (citation omitted)). As set out in footnote 1 above, Lynn was sentenced on the aggravated assault count that was based on hitting Tonya in the head with a baseball bat. This is the very act that caused her death,

---

[3] We remind litigants that the Court will end our practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

so the aggravated assault count should have merged with the malice murder conviction. See *Culpepper v. State*, 289 Ga. 736, 739 (2) (a) (715 SE2d 155) (2011) (unless there is a "deliberate interval" between infliction of a non-fatal injury and a fatal one, the aggravated assault count merges with malice murder). We therefore vacate Lynn's sentence for aggravated assault.

2. Lynn argues that we should vacate the trial court's order denying his motion for new trial for lack of adequate findings and remand for more detailed findings. We disagree.

Lynn argues that, in the absence of detailed findings, we cannot conduct a meaningful review of the claims raised in his motion, especially his claims of ineffective assistance of counsel. Lynn cites cases in which we have remanded for further findings, but none of those cases involve motions for new trial. It is well settled that a trial court is not required to issue written findings of fact and conclusions of law when deciding a motion for new trial. See *Treadaway v. State*, 308 Ga. 882, 886 (2) (843 SE2d 784) (2020). And this principle applies no differently when a motion raises claims of

9

ineffective assistance of counsel. See id. We decline to vacate and remand for a more detailed order.

3. Lynn argues that the trial court erred in denying his motion for a mistrial when the State elicited testimony referencing a polygraph test in violation of a pretrial agreement between the parties. We disagree.

At trial, the prosecutor asked Detective Rachel Love about Lynn's interview in 2011 after he was arrested. In response to a question about who initiated the interview, Detective Love replied, "I started it because he had asked to speak with me by myself. He actually had a polygraph scheduled for that day, as well." Lynn objected and moved for a mistrial. The trial court denied the motion and issued a curative instruction instead, telling the jury that a polygraph test was offered to Lynn, he agreed to take it, the test was never administered, and the jury was to disregard any mention of the test and not consider it in its deliberations.

"When prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the

defendant's right to a fair trial." *White v. State*, 268 Ga. 28, 32 (4) (486 SE2d 338) (1997). But a trial court "can negate the potentially harmful effect of improperly introduced evidence by prompt curative instructions rather than by granting a mistrial." *Walker v. State*, 306 Ga. 44, 49 (4) (829 SE2d 121) (2019). "Whether to grant a mistrial is within the trial court's discretion, which an appellate court will not disturb unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." *Jones v. State*, 305 Ga. 750, 755 (3) (827 SE2d 879) (2019) (citation and punctuation omitted).

Even assuming that the detective's non-responsive and passing reference to a polygraph was prejudicial, any prejudice was low given that the trial court informed the jury that Lynn had agreed to take a polygraph but there were no results, either positive or negative, to report. And the trial court's prompt curative instruction negated any prejudice by telling the jury to disregard the reference, an instruction that we presume the jury followed. See *Walker*, 306 Ga. at 49 (4). There was no abuse of discretion in denying Lynn's motion for a mistrial.

4. Lynn makes several arguments as to why his trial counsel was ineffective. To prevail on any of his claims, Lynn must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by this deficient performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Lynn must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Mims v. State*, 304 Ga. 851, 855 (2) (823 SE2d 325) (2019) (citation and punctuation omitted). "[D]ecisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Richards v. State*, 306 Ga. 779, 781 (2) (833 SE2d 96) (2019) (citation and punctuation omitted). Our inquiry focuses on the objective reasonableness of counsel's performance. See *Bozzie v. State*, 302 Ga. 704, 714 (5) (808 SE2d 671) (2017). To demonstrate prejudice,

Lynn must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mims*, 304 Ga. at 855 (2) (citation and punctuation omitted).

If Lynn fails to meet his burden in establishing one prong of the *Strickland* test, we need not review the other, because a failure to meet either of the prongs is fatal to an ineffectiveness claim. See *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015). In considering an ineffectiveness claim, we review a trial court's factual findings for clear error and its legal conclusions de novo. See *Lawrence v. State*, 286 Ga. 533, 534 (2) (690 SE2d 801) (2010).

(a) Lynn argues that his trial counsel was ineffective for failing to obtain a ruling on a second motion for a mistrial made by counsel when the State played a portion of Lynn's recorded custodial interview in which the polygraph was mentioned a second time. We disagree.

Lynn makes no showing that the trial court would have granted the second motion for a mistrial had trial counsel made a request for a definite ruling. When listening to the recording more closely as part of the mistrial motion, the trial court said it did not hear the polygraph reference, and asked if Lynn wanted a curative instruction. Trial counsel declined, saying she did not want to draw more attention to the issue.

Regardless of whether the reference was discernible, there is no dispute that the recording mentioned nothing more than a scheduled polygraph. On appeal, Lynn argues that the repeated reference to the polygraph was prejudicial because it tended to show that, in 2011, Lynn was prepared to stand by his version of events, which the State argued changed by the time of his trial in 2015. But the record does not show that the State used the polygraph reference against Lynn, and the State's ability to point out inconsistencies in Lynn's versions of the events did not depend on the fact that a polygraph was scheduled, but not taken.

Because these circumstances do not show that a mistrial was necessary to preserve Lynn's right to a fair trial, Lynn has not shown that the court would have granted a mistrial had trial counsel obtained a ruling on his mistrial motion. Thus, trial counsel's failure to obtain a ruling does not constitute deficient performance. See *Yancey v. State*, 292 Ga. 812, 818-819 (4) (740 SE2d 628) (2013) (no deficient performance in failure to make meritless objection, and thus no ineffectiveness in failing to make objection that the trial court "would not have been required to sustain"); see also *Billings v. State*, 293 Ga. 99, 106 (7) (745 SE2d 583) (2013) (same, citing *Yancey*).

(b) Lynn argues that trial counsel was ineffective for failing to move for a mistrial when a reference to a prior "jury" was made when a witness for the prosecution read Lynn's testimony from the first trial. This claim fails.

When the jury reference was made, trial counsel asked for a bench conference and asked the court to direct the witness to avoid saying the term "jury." Trial counsel specifically declined a limiting

instruction, saying that such an instruction would draw more attention to the issue. After noting that there might be other objectionable material in Lynn's prior testimony, the trial court instructed the prosecutor to instruct her witness to read certain lines rather than read the entirety of Lynn's testimony.

At the motion for new trial hearing, one of Lynn's trial counsel testified that she and co-counsel did not move for a mistrial because they had already made two motions (based on the polygraph reference) and that another would be "distracting to the jury and interrupting." She repeated that she and co-counsel did not ask for a limiting instruction because they did not want to draw more attention to the issue and hoped the jurors did not notice the reference. Considering that the "jury" reference was brief and co-counsel's explanations for not moving for a mistrial were reasonable, Lynn has not shown that trial counsel's decision not to move for a mistrial was constitutionally deficient. See *Sweet v. State*, 278 Ga. 320, 325 (8) (602 SE2d 603) (2004) (trial counsel's decision not to move for a mistrial was reasonable where counsel believed motion

16

would have emphasized the prejudicial matter to the jury); *Wright v. State*, 276 Ga. 419, 422 (5) (d) (577 SE2d 782) (2003) (trial counsel's decision not to object to a passing reference to defendant's post-arrest silence "was a valid exercise of professional judgment" where counsel testified that an objection would "focus the jury's attention" on the testimony).

(c) Lynn argues that trial counsel was ineffective for failing to object to three sets of out-of-court statements made by Tonya. Lynn argues that his trial counsel should have objected to the three sets of statements on hearsay grounds and to one of the sets of statements on Confrontation Clause grounds. None of Lynn's arguments prevail because the statements either fell within a hearsay exception or were cumulative of other statements that were properly admitted.

A Confrontation Clause violation occurs when an out-of-court statement admitted into evidence is "testimonial" in nature and the declarant is unavailable at trial and was not previously subject to cross-examination. See *Crawford v. Washington*, 541 U.S. 36, 68

17

(124 SCt 1354, 158 LE2d 177) (2004). "Hearsay" is an out-of-court statement that a party offers into evidence "to prove the truth of the matter asserted" in the statement. OCGA § 24-8-801 (c); see also *Carter v. State*, 302 Ga. 200, 204 (2) (b) (805 SE2d 839) (2017).

(i) Lynn argues that trial counsel should have challenged the admission of Tonya's petition for a temporary protective order ("TPO") filed after Lynn threw her off a bed, as well as testimony as to the petition's contents. He argues that this evidence was inadmissible on hearsay and Confrontation Clause grounds because the sworn, out-of-court statements in the petition were testimonial in nature and Lynn did not have the opportunity to cross-examine Tonya.[4] Lynn also argues that trial counsel should have objected on hearsay grounds when three other witnesses — Travis Royster, Bulloch, and Hamilton Hudson — testified about what Tonya told them about the mattress incident. Lynn's ineffectiveness claim on this ground fails.

---

[4] The TPO was granted ex parte but was later dismissed after Tonya failed to appear for a hearing.

18

Before introducing the challenged testimony, the State had already presented eyewitness testimony about Lynn throwing Tonya off a bed. Tonya's niece testified early in the trial that she was present when Lynn began an argument with Tonya about texts he thought she sent. The niece also testified that she left the room during the argument, she returned when she heard Tonya scream, and she found Tonya on the floor crying and Lynn with his hands underneath the mattress. Lynn does not challenge this testimony, nor could he. See *Favors v. State*, 296 Ga. 842, 845-846 (3) (770 SE2d 855) (2015) ("A witness who personally observed the event to which she is testifying may state her impressions drawn from, and opinions based upon, the facts and circumstances observed by her." (citation and punctuation omitted)).

Even if trial counsel was deficient for failing to object to the admission of additional evidence about the bed incident, Lynn was not prejudiced as a result, because the additional evidence was cumulative of the niece's testimony that was already before the jury. See *Koonce v. State*, 305 Ga. 671, 675 (2) (c) (827 SE2d 633) (2019)

19

(defendant failed to show prejudice resulting from failure to object to certain testimony that was "largely cumulative of other, unobjected-to evidence of the same facts"); *Wilson v. State*, 297 Ga. 86, 87-88 (2) (772 SE2d 689) (2015) (trial counsel's failure to raise hearsay and Confrontation Clause objections to certain testimony was not prejudicial where the challenged testimony was cumulative of other evidence).

(ii) Lynn argues that trial counsel should have raised hearsay objections to the testimony of three witnesses — Morris, Hollifield, and Marsha Saunders — about Tonya's car hood flying up while she was driving. Trial counsel was not deficient because the challenged testimony did not include hearsay, fell within an exception to the hearsay rule, or was cumulative of other admissible evidence.

(A) Morris, Tonya's supervisor, generally described measures her department took to protect Tonya after the bed incident and after Tonya reported that she was afraid that Lynn would hurt her. Morris said that Tonya was generally on time for work, always called or sent a text message if she was ever going to be late, and

20

made Morris promise to start looking for her if she unexpectedly failed to show up for work. When Morris testified about the morning of Tonya's disappearance, she said that, as she was trying to locate Tonya, she received a call from Lynn that "rocked [her] to the core" because she had spoken to him only one other time, when Lynn called to ask if Tonya had arrived at work on a day that Tonya had previously called Morris to say "that she wasn't there yet because the hood of her car flew up for the second time on her way to work, and she was waiting for the police."

Lynn complains that Morris's testimony about the car hood included impermissible hearsay, because Tonya's out-of-court statement was offered to prove that he was responsible for the malfunctioning of the car hood. But the State did not offer Tonya's statement to prove that the hood of Tonya's car flew up, and Tonya's statement to Morris did not even blame Lynn. Rather than trying to prove that the car hood malfunctioned, or that Lynn was to blame, the State introduced the evidence in an attempt to give context to Morris's actions after Tonya failed to show up for work and explain

why Morris became scared after receiving Lynn's call on the morning of Tonya's disappearance. Morris's testimony about Tonya's statement to Morris about the car hood was not hearsay. See *Carter v. State*, 302 Ga. 200, 204 (2) (b) (805 SE2d 839) (2017) (out-of-court statements were not hearsay when offered to give context to defendant's statements). Trial counsel was therefore not deficient for failing to object to Morris's testimony. See *Jackson v. State,* 288 Ga. 213, 216 (2) (d) (702 SE2d 201) (2010) ("Trial counsel was not deficient for failing to object to admissible evidence.").

(B) Hollifield testified that Tonya told her repeatedly that Tonya was afraid that Lynn was trying to kill her, and that Tonya was convinced Lynn had attempted to do so but could not prove it. Hollifield then gave the now-challenged testimony in which she described the day that Tonya's car hood malfunctioned, saying:

> [Tonya] was convinced that [Lynn] had done something to the car so the hood would fly open, thinking that then she would wreck and that would be a way out, you know. So she was convinced that day. She called me when she got to work and told me [Lynn] had tried to kill her that morning and that's how she felt.

22

Even if the statement was offered to prove that Lynn had actually tried to kill Tonya by tampering with her car hood, the trial court still could have admitted the statement under the excited utterance exception to the hearsay rule. OCGA § 24-8-803 (2) ("Rule 803 (2)") provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" shall not be excluded by the hearsay rule. For this exception to apply, a statement need not be made contemporaneously with the startling event, but it must be made while the declarant was still under the stress of excitement of that event. See *Robbins v. State*, 300 Ga. 387, 389-390 (2) (793 SE2d 62) (2016).

From the evidence, a trial court could reasonably conclude that having a car hood fly up while driving would qualify as a startling event. Tonya's statement to Hollifield was made as soon as she got to work after the event, so her statement that she believed Lynn had tried to kill her would qualify as an excited utterance. See *Blackmon v. State*, 306 Ga. 90, 95 (2) (829 SE2d 75) (2019) (victim's statement

relating to defendant's threat to shoot at the car she was in if she did not return home fell under excited utterance exception because the statement was made soon after defendant intercepted the victim when she tried to escape and threatened to shoot the car). Because Hollifield's testimony about the car hood was admissible, trial counsel was not deficient for failing to object to it. See *Walker v. State*, 306 Ga. 637, 645 (2) (b) (832 SE2d 783) (2019) ("[T]he failure to make a meritless objection is not deficient performance.").

(C) Saunders's testimony about the car hood was materially identical to Morris's testimony in that Tonya's statement to Saunders merely described the incident without blaming Lynn for the occurrence. Even if there were a reason to object to Saunders's testimony, trial counsel's failure to do so did not prejudice Lynn given that the testimony was cumulative of Tonya's statement to Morris. See *Wilson*, 297 Ga. at 87-88 (2).

(iii) The last alleged hearsay statement challenged by Lynn concerns Bulloch's testimony that Tonya told him a few days before her death that Lynn threw Tonya against a doorframe. Bulloch gave

24

this testimony as an example of why Tonya was becoming increasingly scared of Lynn. Bulloch testified that Tonya was upset and crying during the conversation, and that she told him she needed to "get out," leave Lynn, and take the children with her.

Lynn argues that Tonya's statement about being thrown against a doorframe was elicited not just to show that she had a fear of Lynn, but that her fear was rational because it was based on the fact that he committed acts of violence against her. The State argues that Tonya's statement fell under the excited utterance and state-of-mind exceptions to the rule against hearsay.

Pretermitting whether Tonya's statement would have been admissible as an excited utterance under Rule 803 (2) or under the state-of-mind exception listed in OCGA § 24-8-803 (3), any failure to object to evidence of the incident did not prejudice Lynn given the strength of the evidence against him.

Lynn admitted that he killed Tonya. It is highly unlikely the jury rejected his defenses that he killed her in self-defense and out of provocation simply because it heard brief testimony that he

pushed her into a doorframe a few days earlier. There was ample evidence in the record showing that Lynn was upset by the possibility that Tonya would leave with their children, and that Tonya feared that Lynn would kill her before he let her go. Lynn admitted that after killing Tonya, rather than calling the police, he cleaned up the scene, put Tonya into his truck, rode around in his truck with her body, and ultimately decided to dump her body in a well several hours after her death. After Tonya's death, Lynn lied to police about how Tonya's vehicle came to be in the library parking lot, and he also erased all the data on his phone before giving his phone to the police when they requested it. Given this strong evidence of guilt, there is no reasonable probability that the result of the proceeding would have been different had trial counsel objected to the evidence regarding Lynn pushing Tonya into a doorframe. See *Henderson v. State*, 304 Ga. 733, 738 (3) (d) (822 SE2d 228) (2018) (no reasonable probability that the outcome of defendant's trial would have been more favorable had the jury been prevented from hearing hearsay statements where evidence against

defendant was strong); *Bozzie*, 302 Ga. at 711 (4) (a) (given the strong evidence of guilt, the defendant failed to establish prejudice from trial counsel's decision to introduce defendant's prior convictions); see also *Virger v. State*, 305 Ga. 281, 294 (7) (a) (824 SE2d 346) (2019) (the strong evidence of defendant's guilt "easily offset any prejudice" resulting from testimony regarding an act of domestic violence).[5]

*Judgment affirmed in part and vacated in part. Melton, C. J., Nahmias, P. J., and Boggs, Bethel, Ellington, and McMillian, JJ., concur. Warren, J., not participating.*

DECIDED DECEMBER 21, 2020.
Murder. Barrow Superior Court. Before Judge Booth.
*Jacob D. Rhein*, for appellant.
*James B. Smith, District Attorney, Patricia J. Brooks, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.

---

[5] Our conclusion remains the same even when we aggregate the prejudice resulting from the assumed trial counsel deficiencies in Division 4 (c) (i) and (c) (ii) (C). See *Jones v. State*, 305 Ga. 750, 757 (4) (e) (827 SE2d 879) (2019) (the prejudice resulting from trial counsel's deficient performance is viewed cumulatively). There are no trial court errors to consider in a cumulative prejudice analysis, so Lynn's claim in this respect fails.