**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**



SUPREME COURT OF GEORGIA

Case Nos. S25C0587, S25C0588, S25C0589, S25C0590, S25C0591, S25C0592, S25C0593, S25C0594, S25C0595.

September 16, 2025

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

THE STATE v. MICHAEL A. ROMAN.
THE STATE v. DAVID J. SHAFER.
THE STATE v. ROBERT DAVID CHEELEY.
THE STATE v. MARK RANDALL MEADOWS.
THE STATE v. DONALD JOHN TRUMP.
THE STATE v. CATHLEEN LATHAM.
THE STATE v. RUDOLPH WILLIAM LOUIS GUILIANI.
THE STATE v. JEFFREY BOSSERT CLARK.
THE STATE v. HARRISON FLOYD.

The Supreme Court today denied the petition for certiorari in these cases.

*All the Justices concur, except, Ellington, McMillian, and Colvin, JJ., who dissent. Peterson, C.J., not participating, and Land, J., disqualified.*

Court of Appeals Case No. A24A1595, A24A1596, A24A1597, A24A1598, A24A1599, A24A1600, A24A1601, A24A1602, A24A1603.

# SUPREME COURT OF THE STATE OF GEORGIA

Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.

Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____, Clerk

PINSON, Justice, concurring in the denial of certiorari.

I agree with the Court's decision to deny these petitions for certiorari. Here's why.

1. This Court's power to review cases that the Court of Appeals has already reviewed — what we call review by "certiorari" — is set by our state constitution. The Georgia Constitution grants our Court the authority to review by certiorari only "cases in the Court of Appeals which are of gravity or great public importance." Ga. Const. of 1983, Art. VI, Sec. VI, Par. V. This means that we generally do not grant certiorari review just because the Court of Appeals or the trial court may have gotten something wrong — that is, for "mere error correction." See Ga. SCt R. 40 ("Certiorari generally will not be granted merely to correct an asserted error…."); *Satcher v. Columbia County*, 319 Ga. 633, 639–40, 640 n.4 (2024); *Mobuary v. State*, 312 Ga. 337, 340–41 (2021) (Nahmias, CJ, dissenting). Nor do we typically grant review just because a case or its subject matter happens to have found its way into the public spotlight. Instead, our focus in assessing whether a case warrants the exercise of our

certiorari jurisdiction is supposed to be its potential impact on the law of Georgia.

To gauge that impact, we ask whether the case presents a legal question of "gravity or great importance to the public." See Ga. Const. of 1983, Art. VI, Sec. VI, Par. V; Ga. SCt R. 40(1) ("Review on certiorari is not a right. A petition for the writ will be granted only in cases of great concern, gravity, or importance to the public."). We typically assess whether a given legal question has sufficient gravity by asking, for example, whether the Court of Appeals has decided the question in a way that conflicts with other decisions of the Court of Appeals or of this Court; answered a legal question by applying precedent of this Court that should be reconsidered; or decided an "important question of state law that is likely to recur and has not been, but should be, settled by this Court." Ga. SCt R. 40(1). These nonexclusive examples reflect the aim of certiorari review: ensuring that our courts' interpretation of the law of Georgia is correct, settled, and ultimately uniform with respect to important legal issues that courts and litigants are likely to see in the future.

But identifying a legal question of sufficient gravity is not enough on its own to warrant certiorari review — that question must also be presented by the case when it arrives at this Court. Although our Constitution entrusts this Court with the responsibility to settle important legal questions, we are still a court, and courts are not "vehicles for engaging in merely academic debates or deciding purely theoretical questions." *Sons of Confederate Veterans v. Henry County Bd. of Commissioners*, 315 Ga. 39, 39 (2022). Instead, we "'say what the law is' only as needed to resolve an actual controversy." Id. Thus, even if a party has identified a question of gravity in a given case, before granting review, we still must ask whether answering that question of gravity is necessary in some way to resolving the case. If not — for example, if answering that question wouldn't matter to the outcome of the underlying case, or if that question was not even squarely presented to or decided by the courts below — then reaching out to decide that question anyway would exceed our limited judicial role. In other words, before granting certiorari review, we must ensure not only that the petition identifies a

question of gravity, but also that the question is actually presented by the case, and that answering it would help resolve the case.

2. Here, the State asks us to grant review to answer the question whether a prosecutor may be disqualified "based solely upon on appearance of impropriety and absent a finding of an actual conflict of interest or forensic misconduct." In an appropriate case, that question might warrant our review. The legal basis for a rule that prosecutors may be subject to disqualification based only on conduct that creates the appearance of impropriety is not clear: I'm not aware of a specific constitutional or statutory basis for such a rule; this Court only suggested that basis for disqualification as a possibility (arguably in dicta) for attorneys generally in *Blumenfeld v. Borenstein*, 247 Ga. 406, 409 (1981); and that decision relied in part on a since-scuttled rule of professional responsibility addressing the appearance of impropriety, see id. (citing Canon 9 of the former Code of Professional Responsibility, removed effective January 1, 2002, which stated that "[a] lawyer should avoid even the appearance of professional impropriety"); Ga. Rule of Prof'l Conduct

3.5, cmt. 2. On the other hand, the idea that public prosecutors should be held to a higher standard than private attorneys for purposes of disqualification is not without force, and it finds some support in the language of some of our earlier decisions. See *Gaulden v. State*, 11 Ga. 47, 50 (1852) (explaining that "[t]he administration of the law should be free from all temptation and suspicion … and … public policy most emphatically demands" that a prosecutor should not later appear as counsel for someone he prosecuted, because "[s]uch a practice will have a tendency to greatly embarrass the administration of the Criminal Law"); *Conley v. Arnold*, 93 Ga. 823, 825 (1894) (stating that although "[w]e have not the slightest idea that anything intentionally wrong or unbecoming on his part was intended," it was not "lawful or consistent with public policy or with sound professional ethics" for a lawyer to defend the perpetrator of a battery in a civil case when the lawyer had prosecuted the battery criminally). See also *Davenport v. State*, 157 Ga. App. 704, 705 (1981) (holding that "public policy prohibits a district attorney from prosecuting a case, … while representing the

7

victim of the alleged criminal act in a divorce proceeding involving the accused" because "[u]nder such circumstances there is at least the appearance of impropriety"). If this question — whether conduct creating an appearance of impropriety alone is grounds for disqualifying a prosecutor — is presented by future cases, we may well need to take it up in one of them.

But, in my view, *that* possibly cert-worthy question is not presented by *this* case, at least not as it appears before this Court. The root of the problem is the State's approach to litigating this issue on appeal. In the Court of Appeals, the defendants here appealed the trial court's disqualification order, which (1) found that the conduct of the district attorney and special prosecutor created a "significant appearance of impropriety," and (2) as a remedy, determined that one of those two prosecutors would have to withdraw from the case.[1] In doing so, the defendants did not contest

---

[1] The trial court also concluded that certain of the district attorney's public comments were "legally improper" under a section of the order entitled "forensic misconduct," but the court went on to deny the defendants' motions for disqualification and dismissal based on forensic misconduct.

8

the appearance-of-impropriety finding, but they contended that the trial court's "one of you has to go" version of disqualification was error, and that it should have instead simply disqualified the district attorney. And critically, the State did not cross-appeal the trial court's ruling. Indeed, as the Court of Appeals explained, the State asked the Court of Appeals "to affirm the trial court's order in its totality, including the imposition of [its] alternative remedy." So, taken together, the parties' positions in the Court of Appeals posed a narrow and case-specific question for the Court of Appeals to answer: taking as an unchallenged given both the trial court's finding of a significant appearance of impropriety and that *some* kind of disqualification remedy was required to cure the harm caused by the prosecutors' conduct, was the trial court's chosen remedy an abuse of discretion? And indeed, that was how the parties argued the issue to the Court of Appeals.

And importantly, the Court of Appeals' legal analysis appears to have stayed within that narrow framing.[2] In its opinion, the court

---

[2] The State's failure to cross-appeal may not have bound the Court of

explained that because the State failed to cross-appeal, "our consideration of the appearance of impropriety is limited to the remedy fashioned by the trial court." *Roman v. State*, 373 Ga. App. 863, 871 (2024). The court went on to say that it had to "address the *remedy* in the context of a significant appearance of impropriety caused by the conduct of a public prosecutor," which distinguished this case from private-counsel disqualification cases. Id. at 872 (emphasis added) (distinguishing *Blumenfeld*, 247 Ga. at 409–10). And the court framed its key holding as one about the choice of remedy, too, concluding that the trial court erred by not disqualifying the district attorney because "[t]he remedy crafted by the trial court to prevent an ongoing appearance of impropriety" did not fully cure the harm, and "no other remedy will suffice to restore public confidence in the integrity of these proceedings." Id. at 873. In short, rather than deciding any broader question about whether

Appeals to take its narrow analytical path, see *Georgia Soc. of Plastic Surgeons, Inc. v. Anderson*, 257 Ga. 710, 711 (1987) (explaining that "a ruling that becomes material to an enumeration of error urged by an appellant may be considered by the appellate court without the necessity of a cross-appeal"), but neither was the court required to reach beyond the parties' framing.

10

an appearance of impropriety can serve as an independent ground for disqualification of public prosecutors, the Court of Appeals' decision appears to have resolved a narrow, case-specific dispute about the trial court's choice of disqualification remedy.

If that's the best reading of the Court of Appeals' decision — and I think it is — that decision does not raise a question of gravity that warrants our further review. The question whether a trial court abused its discretion in choosing a particular disqualification remedy under the specific and unusual circumstances of this case is not a question of Georgia law at all likely to arise in future cases. Nor does the Court of Appeals' fact-bound decision that the trial court abused its discretion create any apparent conflict with decisions of the Court of Appeals or this Court. Thus, even if one believes that the Court of Appeals erred in reaching that decision, granting review to answer that question would be mere error correction, and this Court generally does not exercise our certiorari jurisdiction merely to correct errors that do not have some broader impact on Georgia law. See Ga. SCt R. 40(1)(c).

11

To be sure, it is plausible to read the Court of Appeals' decision as holding more broadly that, as a general matter, conduct that creates an appearance of impropriety can be grounds for disqualifying a prosecutor. At bottom, the Court of Appeals concluded that the district attorney had to be disqualified to address the appearance of impropriety found by the trial court, explaining that "this is the rare case in which disqualification is mandated." *Roman*, 373 Ga. App. at 873. One might argue that such a decision rests on a necessary premise that conduct creating an appearance of impropriety is a sufficient ground for disqualification, and in turn treat that premise as a holding. See *State v. Wierson*, 321 Ga. 597, 606 (2025) ("[T]he holding of a judicial decision is more than just its result on a given set of facts — it includes, to some degree, the reasoning or principles that were necessary to that decision."). I disagree with that view in light of the posture of this case as it was presented to the Court of Appeals and the court's express and repeated focus on the choice of remedy alone. See *Roman*, 373 Ga. App. at 871–73. But I acknowledge that drawing the line between

12

holding and dicta is not always easy, and "[o]ne judge's holding may be another's dicta." *Wierson*, 321 Ga. at 605.

Even under that alternative reading of the Court of Appeals' decision, however, I am not persuaded that this case would warrant our review at this time. For one thing, as discussed above, it is not so clear (as the State suggests) that there is no conceivable legal basis for holding a public prosecutor to a higher standard than a private lawyer for purposes of disqualification, at least as a general matter. See *State v. Wooten*, 273 Ga. 529, 531 (2001) (explaining that a public prosecutor's responsibility "differs from that of the usual advocate" because the prosecutor represents the people and has a "duty . . . to seek justice"). Cf., e.g., *Gaulden*, 11 Ga. at 50 (explaining that "[t]he administration of the law should be free from all temptation and suspicion" and citing "public policy" as the basis for disqualifying a former prosecutor from serving as defense counsel based on a conflict of interest). For another, even assuming the Court of Appeals held as much, such a public-prosecutor-specific holding would not appear to conflict, at least not squarely, with any

decisions of our appellate courts. And perhaps most important, it is not clear (at least not at this time) that this legal question will recur with any frequency. Appellate decisions addressing attempts to disqualify prosecutors are few and far between, and only a handful of those addressed a claim that a prosecutor must be disqualified based even in part on conduct that created an appearance of impropriety. See, e.g., *Neuman v. State*, 311 Ga. 83, 88–89 (2021); *Lyons v. State*, 271 Ga. 639, 640 (1999); *Pruitt v. State*, 270 Ga. 745, 753–54 (1999); *Ventura v. State*, 346 Ga. App. 309, 309–11 (2018); *Whitworth v. State*, 275 Ga. App. 790, 791–97 (2005). Could this case change that? Perhaps. But it seems more likely to me that the circumstances of this case are unique, and I am not convinced that parties will rely on it for anything broader than the Court of Appeals' stated conclusion that, based on the specific findings in this case, the trial court chose the wrong remedy. And of course, if this prediction turns out to be wrong, we will have the opportunity to address the legal question about the appearance of impropriety standard for public prosecutors when it is properly presented in a case without

14

the unusual procedural limitations and other circumstances that make this case a poor vehicle for reaching that question.

*

Members of the public may well be interested in the case underlying this petition for certiorari. But our focus in assessing whether to grant review under our certiorari jurisdiction is on the law of Georgia. Given the parties' positions, the corresponding narrow question before the Court of Appeals, and that court's limited resolution of that question, the decision below does not raise the kind of legal question that warrants further review by this Court under our certiorari jurisdiction.

I am authorized to state that Presiding Justice Warren and Justice Bethel join in this concurrence.

MCMILLIAN, Justice, dissenting.

I would grant certiorari because the legal issue necessarily presented here – whether an attorney can be disqualified based on the appearance of impropriety alone – affects every single active lawyer in the State of Georgia, the Court of Appeals's decisions are in conflict on this point, our Court's precedent warrants reconsideration, and the issue is likely to recur.

Some background is required to understand the gravity of this issue. In 2023, the State, through the Atlanta Judicial Circuit District Attorney Fani Willis ("DA Willis"), charged Respondents in a 97-page indictment with RICO violations and other crimes in connection with an alleged conspiracy to unlawfully change the outcome of the 2020 presidential election. Respondent Roman moved to dismiss the indictment and to disqualify DA Willis, her office, and Special Assistant District Attorney Nathan Wade ("SADA Wade") from further prosecution based on an alleged conflict of interest and an appearance of impropriety, asserting that DA Willis and SADA Wade were engaged in a romantic relationship and that DA Willis

16

had a personal financial interest in the case. The other Respondents later filed motions to dismiss and for disqualification on the same grounds.[3]

> After a multiple-day evidentiary hearing, the trial court found:
>
> the [Respondents] failed to meet their burden of proving that the District Attorney acquired an actual conflict of interest in this case through her personal relationship and recurring travels with her lead prosecutor. The other alleged grounds for disqualification, including forensic misconduct, are also denied. However, the established record now highlights a significant appearance of impropriety that infects the current structure of the prosecution team . . . .

In addition, the trial court noted that "an odor of mendacity" remained with respect to the testimony of certain witnesses and that "reasonable questions about whether the District Attorney and her hand-selected lead SADA testified untruthfully about the timing of their relationship further underpin the finding of an appearance of impropriety and the need to make proportional efforts to cure it." As a remedy for the "financial cloud of impropriety and potential

---

[3] The other Respondents also asserted "forensic misconduct" by DA Willis based on statements she made at a church service and other extrajudicial statements.

17

untruthfulness," the trial court provided two options: DA Willis and her office could step aside or SADA Wade could withdraw from the prosecution team. The trial court also denied the Respondents' motions to dismiss the indictment. The Respondents appealed.

On appeal, the Court of Appeals affirmed in part and reversed in part in a divided opinion. See *Roman v. State*, 373 Ga. App. 863 (2024). Relying on a leading case from this Court, *Blumenfeld v. Borenstein*, 247 Ga. 406, 409 (1981), the majority opinion explained that in *Blumenfeld*, this Court held that a trial court's disqualification based on the appearance of impropriety due to *status* was improper and that the appearance of impropriety based on *conduct* was also generally insufficient to justify disqualification. But this Court left open the possibility that the appearance of impropriety based on conduct could justify disqualification when the interest of the public at large outweighs the client's interest in choice of counsel. See id. at 409.[4] The majority opinion explained that the

_____

[4] We explained:

It is perhaps helpful to view the issue of attorney disqualification

18

district attorney's important role in the administration of justice justified disqualification because there was no countervailing client's interest in choice of counsel. *Roman*, 373 Ga. App. at 873 (1). Relying on this reasoning and the trial court's finding of a "significant appearance of impropriety," the majority opinion thus concluded that "this is the rare case in which disqualification is mandated and no other remedy will suffice to restore public confidence in the integrity of these proceedings." Id. By this holding,

---

as a continuum. At one end of the scale where disqualification is always justified and indeed mandated, even when balanced against a client's right to an attorney of choice, is the appearance of impropriety coupled with a conflict of interest or jeopardy to a client's confidences. In these instances, it is clear that the disqualification is necessary for the protection of the client. Somewhere in the middle of the continuum is the appearance of impropriety based on conduct on the part of the attorney. As discussed above, this generally has been found insufficient to outweigh the client's interest in counsel of choice. This is probably so because absent danger to the client, the nebulous interest of the public at large in the propriety of the Bar is not weighty enough to justify disqualification. Finally, at the opposite end of the continuum is the appearance of impropriety based not on conduct but on status alone. This is an insufficient ground for disqualification. This is particularly clear in this case in light of the trial court's specific finding that there was no actual impropriety on the part of any of the parties.

*Blumenfeld*, 247 Ga. at 409.

19

the Court of Appeals extended *Blumenfeld,* ruling that an appearance of impropriety alone was not only sufficient grounds for disqualification, but actually *required* disqualification under these circumstances.

On certiorari, the parties focus their arguments on whether the Court of Appeals erred in the remedy that it ordered based on the appearance of impropriety by DA Willis, assuming as did the lower courts, that *Blumenfeld*, its progeny, and other case law relying upon the appearance of impropriety factor in the context of attorney disqualification remain good law. I question that assumption, which is the linchpin of the Court of Appeals's decision and therefore part of its holding. See *State v. Wierson*, 321 Ga. 597, 606 (2025) ("[T]he holding of a judicial decision is more than just its result on a given set of facts—it includes, to some degree, the reasoning or principles that were necessary to that decision.").[5]

---

[5] The concurring opinion concludes that the issue of whether the appearance of impropriety alone can warrant disqualification is not a holding given the procedural posture where the State did not appeal and the parties did not raise the argument. However, I fail to see how a party's decision on whether to appeal or the parties' briefing affects how one reads an appellate opinion to determine its reasoning and holding. Here, the Court of Appeals

20

*Blumenfeld* relied on Canon 9 of the then-existing Code of Professional Responsibility, which provided: "A lawyer should avoid even the appearance of professional impropriety." However, effective January 1, 2002, this Court revised Georgia's Rules of Professional Conduct, removing Canon 9 and any mention of "appearance of impropriety," outside a comment to the rule concerning lawyer's direct dealings with a tribunal. See Rule of Professional Conduct 3.5, comment 2. Indeed, the United States Court of Appeals for the Eleventh Circuit has called the "appearance of impropriety" standard from former Georgia Canon 9 "no longer recognized by the State Bar of Georgia in its Rules of Professional Conduct" and "outdated," in opining that a district court properly chose not to apply it. *Herrmann v. GutterGuard, Inc.*, 199 FApp'x 745, 753-54 (11th Cir. 2006). See also *Waters v. Kemp*, 845 F2d 260, 265 (11th Cir. 1988) ("The Model Code has been replaced by the Model Rules, and thus does not govern the professional conduct of

could not have held that disqualification was required without accepting, at least implicitly, that there was a "significant appearance of impropriety" that could justify disqualification.

21

attorneys in the Southern District of Georgia. Under the Model Rules, the appearance of impropriety is not a ground for disqualifying a lawyer from representing a party to a lawsuit."). No other cases from our Court or the Court of Appeals have recognized this change in the rules or considered how it affects whether an attorney may be disqualified solely based on the appearance of impropriety.[6]

---

[6] It appears that all of the cases in which this Court has addressed the appearance of impropriety in attorney disqualifications since *Blumenfeld* involved circumstances where there was also a conflict of interest, disclosure of privileged information, or some other misconduct. See *Neuman v. State*, 311 Ga. 83, 89 (2021) ("Disqualification of the prosecuting attorneys might be appropriate . . . where the privileged information disclosed to the prosecution was so voluminous that it would cast doubt on the fairness of the trial absent disqualification of the prosecuting attorneys who had reviewed the files."); *Battle v. State*, 301 Ga. 694, 698 (2017) ("Certainly, a conflict of interest or the appearance of impropriety from a close personal relationship with the victim may be grounds for disqualification of a prosecutor."); *Chapel v. State*, 264 Ga. 267, 269 (1994) (concluding that "both the conflict of interest and the appearance of impropriety presented by the circumstances . . . render[ed] [attorney's] representation of [client] impermissible"); *Crawford W. Long Mem'l Hosp. of Emory Univ. v. Yerby*, 258 Ga. 720, 721 (1988) (stating—in case where attorney who represented a hospital and then represented the widow of a patient who had been injured while attorney was representing the hospital [i.e., an actual conflict under current Ga. R. Prof. Conduct 1.9]—that motion to disqualify the attorney should have been granted solely because of "an impermissible appearance of impropriety"). Cf. *Pruitt v. State*, 270 Ga. 745, 753 (1999) ("In order to prevail on this claim [that the criminal defendant's counsel must be disqualified], [client] must show the existence of an actual conflict of interest that adversely affected his lawyer's performance.").

The Court of Appeals's case law complicates the issue in that it appears to have repeatedly read *Blumenfeld* to require an actual impropriety or conflict of interest to accompany the appearance of impropriety to warrant disqualification, though that rule—whether right or wrong—has never actually been announced in our cases. See *Ga. Trails and Rentals, Inc. v. Rogers*, 359 Ga. App. 207, 214 (2021) ("[O]ur Supreme Court has held that absent an actual conflict of interest or actual impropriety, the trial court does not abuse its discretion in denying a motion to disqualify counsel."); *Kamara v. Henson*, 340 Ga. App. 111, 116 (2017) ("Absent an actual conflict of interest or actual impropriety, we cannot say that the trial court abused its discretion in denying [plaintiff's] motion to disqualify Defense Counsel."); *Cohen v. Rogers*, 338 Ga. App. 156, 164 (2016) ("[T]here must be proof of an *actual* impropriety to disqualify an attorney from representing a client."). Although then-Judge Land's dissenting opinion cited *Georgia Trails* and *Kamara* for the proposition that a conflict of interest or actual impropriety is required for disqualification, the *Roman* majority inexplicably did

23

not cite or address any of these cases even though they are binding on that court.[7] See *White v. State*, 305 Ga. 111, 121 (2019) ("[T]he Court of Appeals was obligated to continue to rely on the *older* precedent from that court until such time as the older law was properly overruled by that court or reversed or overruled by this Court.").

The issues of whether *Blumenfeld* remains good law and whether the appearance of impropriety alone can support the disqualification of an attorney is a question of gravity. Supreme

---

[7] In addition, although the *Roman* majority properly recited that an appellate court reviews a ruling on a motion to disqualify a prosecutor for an abuse of discretion, see *Neuman*, 311 Ga. at 296, it is not clear that the Court of Appeals correctly applied that standard in rejecting the trial court's remedy, as the Court of Appeals did not appear to acknowledge that the trial court was in the best position to determine when the appearance of impropriety arose and what remedy was adequate; it is difficult to see how the trial court's remedy was not within the range of reasonable remedies. See *Roman*, 373 Ga. App. at 873 ("The remedy crafted by the trial court to prevent an ongoing appearance of impropriety did nothing to address the appearance of impropriety that existed at times when DA Willis was exercising her broad pretrial discretion about who to prosecute and what charges to bring."). See generally *Premier Pediatric Providers, LLC v. Kennesaw Pediatrics, P.C.*, 318 Ga. 350, 355 (2024) (explaining that under the abuse of discretion standard, "the trial court's conclusions [generally] will be affirmed so long as they are in conformity with the governing legal principles, based on correct facts that are relevant to determining whether any legal requirements are satisfied, and within the range of possible outcomes in which there could be room for reasonable and experienced minds to differ.") (cleaned up).

Court Rule 40 (1) provides:

> A petition for the writ [of certiorari] will be granted only in cases of great concern, gravity, or importance to the public. . . . such cases may include those in which:
>
> (a) A decision of the Court of Appeals on an important matter is in conflict with other decisions of the Court of Appeals or decisions of this Court; or
>
> (b) A decision of the Court of Appeals on an important matter faithfully applies a decision of this Court, but this Court's precedent warrants reconsideration; or
>
> (c) The Court of Appeals has decided an important question of state law that is likely to recur and has not been, but should be, settled by this Court.

These petitions meet the definitions of gravity under subsections (a), (b), and (c). To begin, the issue of whether the appearance of impropriety alone can justify disqualification of an attorney affects every single active lawyer in this State. This qualifies as an "important matter" under Rule 40. And as explained above, the Court of Appeals's decisions on this issue are in conflict. See Supreme Court Rule 40 (1) (a). Likewise, the *Roman* majority purports to apply and extend *Blumenfeld*, but *Blumenfeld* warrants reconsideration given the removal of the appearance-of-impropriety

25

standard from our Code of Professional Responsibility over 20 years ago. See Supreme Court Rule 40 (1) (b).

Finally, the question of whether the appearance of impropriety alone can justify disqualification of an attorney is "important question of state law that is likely to recur and has not been, but should be, settled by this Court." Supreme Court Rule 40 (1) (c). Most states, like Georgia, have patterned their lawyer ethics rules on the Model Rules of Professional Conduct, including its deletion of the "appearance of impropriety" standard. Many of those states have subsequently rejected the standard and do not apply it in disqualification cases. See, e.g., *O Builders & Assocs., Inc. v. Yuna Corp. of NJ*, 19 A3d 966, 981 (Stern, J., dissenting) (N.J. 2011); *Jacob N. Printing Co., Inc. v. Mosley*, 779 NW2d 596, 600-01 (Neb. 2010); *Ark. Valley State Bank v. Phillips*, 171 P3d 899, 909 (Okla. 2007); *State v. Bell*, 646 SE2d 888, 891 (S.C. Ct. App. 2007); *Wade v. Nationwide Mut. Fire Ins. Co.*, 225 F. Supp. 2d 1323, 1331 (B) (S.D. Ala. 2002); *State v. Dimaplas*, 978 P2d 891 (Kan. 1999); *Schwartz v. Cortelloni*, 685 NE2d 871 (Ill. 1997). Most states, however, continue

to apply the standard as a factor that may be considered in deciding disqualification but that is alone insufficient to warrant disqualification.  See, e.g., *State v. Goldsberry*, 18 A3d 836, 850 (II) (A) (Md. 2011); *Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n, Inc.*, 797 NW2d 789, 810 (Wis. 2011); *Sisk v. Transylvania Cmty. Hosp., Inc.*, 695 SE2d 429, 435-37 (N.C. 2010); *State v. Baker*, 934 A2d 820, 822, 824 (Vt. 2007); *Town of Johnston v. Santilli*, 892 A2d 123, 132 (R.I. 2006); *Bottoms v. Stapleton*, 706 NW2d 411, 416 (Iowa 2005); *People v. Ortega*, 808 NE2d 496, 502 (Ill. 2004); *Kala v. Aluminum Smelting & Ref. Co., Inc.*, 688 NE2d 258, 268 (Ohio 1998); *Bergeron v. Mackler*, 623 A2d 489, 494 (Conn. 1993).  Other states have concluded that an appearance of impropriety can be sufficient, by itself, to justify disqualification. *State ex rel. Bluestone Coal Corp. v. Mazzone*, 697 SE2d 740, 750 (W. Va. 2010); *State v. Robinson*, 179 P3d 1254, 1261 (N.M. 2008); *Foster v. Traul*, 175 P3d 186, 194 (Idaho 2007); *State v. Tensley*, 955 So2d 227, 242  writ denied, 969 So. 2d 629 (La. Ct. App. 2007); *Sturdivant v. Sturdivant*, 241 SW3d 740, 745, 747 (Ark. 2006); *State v. Davis*, 141 SW3d 600, 613 (Tenn.

2004); *United States v. Dyess*, 231 FSupp2d 493, 498 (S.D. W. Va. 2002) (disqualifying entire prosecutor's office); *Altman v. Rumbolz*, 648 NW2d 823, 827-28 (S.D. 2002); *City of County of Denver v. County Court of City and County of Denver*, 37 P3d 453 (Colo. App. 2001); *Lovell v. Winchester*, 941 SW2d 466, 468 (Ky. 1997); *Griffith v. Taylor*, 937 P2d 297, 302 (Alaska 1997); *People v. Mayhew*, 600 NW2d 370 (Mich. App. 1999); *Adam v. Macdonald Page & Co.*, 644 A2d 461, 463 n.6, 464 (Me. 1994); *In re Estate of Pedrick*, 482 A2d 215, 218 n.3 (Pa. 1984); see also *Gomez v. Superior Court*, 717 P2d 902, 904 (Ariz. 1986) (noting that the appearance of impropriety "survives as a part of conflict of interest" analysis in disqualification proceedings, but it "is 'simply too slender a reed on which to rest a disqualification order except in the rarest of cases'"). And even this rough grouping of case law from different jurisdictions remains questionable in several instances, with the state of the law on the issue in various jurisdictions being confusing and even inconsistent, much like the state of our own law on the issue. I note, too, that several states treat the issue differently depending on whether it

arises in the civil or the criminal context. This survey of other states demonstrates that this issue is an important one that is likely to recur and, given the wide variety of approaches, should be settled by this Court.

Adding even more gravity, this is also an issue that is likely to recur with respect to prosecutors across the State in particular because of the recent passage of OCGA § 17-11-6, which provides:

    (a)   In the event that:

        (1)   The prosecuting attorney in a felony or misdemeanor criminal case is disqualified due to improper conduct on the part of such prosecuting attorney; and

        (2)   Such criminal case is dismissed by the court or a subsequent prosecutor tasked with prosecuting such case following such disqualification;

        any defendant against whom such charges are dismissed shall be entitled to an award of all reasonable attorney's fees and costs incurred by the defendant in defending the case.

As such, there is now a financial incentive to move to disqualify prosecutors. Indeed, a review of the legislative history of that bill

shows that although opponents' primary concern centered on the partisan politics surrounding the bill and the prosecution underlying the specific cases on certiorari review here, one of the concerns expressed was that the law would be abused in future cases, having a chilling effect on criminal prosecutions. See House Session Day 39 (Apr. 2, 2025).

And the Court of Appeals's opinion adds to that incentive to assert an appearance of impropriety to disqualify prosecutors because that standard is amorphous and likely easiest to meet. See, e.g., *Ark. Valley State Bank*, 171 P3d at 909 n.45 (quoting in part John W. Castles III & Laurie E. Foster, Conflicts and Lawyer Disqualification, Nat'l L.J., Feb. 6, 1984, at 16, col. 3, in noting that some courts have dropped the appearance of impropriety as a basis for disqualification "largely due to the fact that when the American Bar Association proposed the Model Rules of Professional Conduct, Rule 1.7 was drafted specifically to remove the appearance of impropriety test because the test was deemed 'too vague' and presented 'severe problems'"); *Adoption of Erica*, 686 NE2d 967, 973

30

n.10 (Mass. 1997) (quoting in part 1 G.C. Hazard & W.W. Hodes, The Law of Lawyering § 1.9:105, at 294-95 (2d ed. 1990), in describing the "appearance of impropriety" standard as "nebulous" and "rejected by most courts as a sole basis for disqualification"); see also *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (III) (A), 440 (IV) (105 SCt 2757, 86 LE2d 340) (1985) ("We acknowledge that an order disqualifying counsel may impose significant hardship on litigants," and "[we] share the Court of Appeals' concern about 'tactical use of disqualification motions' to harass opposing counsel."); id. at 441 (Brennan, J., concurring) ("[T]he tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation.").

No doubt, the facts of these cases are unusual and the cases are politically-charged due to the subject matter and the parties involved, including the current President of the United States. But neither the unusual underlying facts nor the identities of the parties deprive these cases of gravity. This is because the legal principles underlying the Court of Appeals's ruling—in particular, the

31

proposition that an appearance of impropriety alone can warrant and even require disqualification—are not bound to this specific factual scenario or to these specific parties but will instead apply to a wide variety of situations in which a litigant can show only an appearance of impropriety—and those situations are likely to recur with some frequency.[8]

In short, this case requires the resolution of a novel issue of gravity about which the state of the law is confused and conflicted—both in Georgia and across the country—and thus warrants consideration (or reconsideration) by this Court. Moreover, the issue affects the bench and bar across the board and will likely recur such that guidance from this Court is desirable. Therefore, I would grant certiorari to resolve the issue of attorney disqualification based solely on the appearance of impropriety and would propose the following questions:[9]

---

[8] In other words, I would have granted certiorari no matter who the parties were or the underlying facts of these cases. Because I believe that these issues are likely to recur soon, I encourage the Court to use the next available opportunity to resolve these questions.

[9] In proposing these questions, I express no opinion about the ultimate

(1) To the extent Georgia appellate case law permits disqualification of an attorney solely on the basis of an appearance of impropriety, see *Blumenfeld v. Borenstein*, 247 Ga. 406 (1981), does that remain good law following the adoption of the 2001 Georgia Rules of Professional Conduct?

(2) If not, what is the legal basis for disqualification of an attorney solely on the basis of an appearance of impropriety?

(3) Did the superior court abuse its discretion by denying the motion to disqualify even though the court found a "significant appearance of impropriety"?

I am authorized to state that Justices Ellington and Colvin join in this dissent.

---

outcome. As noted above, some states with similar rules of professional conduct have concluded that the appearance of impropriety alone can be the basis for disqualification of an attorney while other states have reached the opposite conclusion and still other states have adopted a standard somewhere in between.